UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAURA ROBERTS,

                                    04-CV-6637T

                Plaintiff,

       v.                       **DECISION**
                                    **and ORDER**

THE HEALTH ASSOCIATION,

                Defendant.
_____

<u>INTRODUCTION</u>

    Plaintiff Laura Roberts, "Roberts", brought this action on December 30, 2004, claiming that she had been discriminated against by her employer on the basis of her gender and marital status. On April 25, 2005, plaintiff filed an Amended Complaint in which she abandoned her claims of gender and marital status discrimination, and raised instead claims of disability discrimination under the Americans with Disabilities Act ("ADA"), and violations of the Family and Medical Leave Act ("FMLA"). Specifically, plaintiff claims that she was disabled, that the defendant Health Association failed to provide reasonable accommodations to assist her in performing her work, and that such failure to accommodate constitutes a violation of the ADA. Plaintiff also contends, apparently in the alternative, that she was prohibited from returning to her employment after a leave of absence because she was perceived as being disabled by the defendant. Plaintiff also contends that the defendant wilfully interfered with, restrained,

or denied her right to take unpaid leave under the FMLA, and retaliated against the plaintiff after she attempted to invoke her FMLA rights.

Defendant moves for summary judgment on grounds that there are no material issues of fact in dispute and that as a matter of law, plaintiff has failed to establish any claim under the FMLA or ADA. For the reasons set forth below, I grant defendant's motion for summary judgment.

BACKGROUND

Plaintiff Laura Roberts was employed as a floor nurse and a night shift supervisor by defendant Health Associates from September, 1999 to May 25, 2004.  In January, 2004, plaintiff allegedly began suffering from debilitating health concerns, including syncope, faintness, dizziness and depression.  During that same period, plaintiff alleges that she was caring for her terminally ill mother.

On January 15, 2004, plaintiff requested 4 days off from work because of a medical condition. In support of her request, plaintiff submitted a doctor's note stating that it was medically necessary for her to take the time off.  On January 23, 2004, plaintiff suffered a fire at her residence, and was forced to move to a hotel for approximately a month to a month and a half.  Though the record is not clear as to how much time off plaintiff took to deal with her living situation, Roberts acknowledges that she used

vacation days to take time off during this period.  From January, 2004 through April 3, 2004, plaintiff used 112.5 hours of vacation, personal time, and sick time.  Plaintiff acknowledges that any time taken between January 20, 2004 and March 25, 2004 was not related to any medical needs.

On March 25, 2004, plaintiff requested time off for medical reasons, and provided a note from her doctor stating that she would be unable to work until April 1, 2004.  Prior to returning to work, plaintiff provided another doctor's note extending her return-to-work date to April 5, 2004.  On April 9, 2004, plaintiff submitted a third doctor's note stating retroactively that she was unable to work from April 5, 2004, through April 19, 2004.

On April 1, 2004, after having received plaintiff's second doctor's note, defendant sent a notice to the plaintiff informing her of New York State disability benefits, the defendant's medical leave policy, the FMLA, and a disability benefits form from its insurance carrier.  Although defendant sent information regarding the FMLA, defendant did not send plaintiff an FMLA form.

Having been out of work since March 25, 2004, plaintiff returned to work on April 19, 2004.  She worked for three days, but then presented a fourth note from her doctor stating that she would be unable to work through June 1, 2004.

Plaintiff applied for short-term disability benefits through the defendant's insurance carrier Aetna, and on May 5, 2004, Aetna

granted plaintiff's application for benefits effective through April 19, 2004. Aetna further stated, however, that it had insufficient information to determine whether or not Roberts was disabled after April 19, 2004. Aetna required additional information which Roberts claims she provided, but which was allegedly never received by Aetna.

On May 21, 2004, after plaintiff had been out of work for almost 2 months, defendant sent a letter to Roberts indicating that if she did not provide Aetna with the proper paperwork to document her disability status, her employment would be terminated on May 25, 2004. Upon Roberts' receipt of the letter, Roberts discussed the matter with Linda Crowner, ("Crowner") the benefits coordinator for the defendant, and satisfied Crowner that the proper paperwork had been submitted to Aetna. Thereafter, Aetna denied plaintiff's request for short-term disability on grounds that the medical evidence submitted by plaintiff's doctor was incomplete, and the evidence that was submitted did not support a finding of a short-term disability.

On May 25, 2004, one week prior to her return to work date, plaintiff submitted a fourth doctor's note extending her disability period from June 1, 2004 to June 14, 2004. On June 8, 2004, plaintiff, for the fifth time, submitted a doctor's note, extending her disability period from June 14, 2004 through July 19, 2004. Prior to submitting her fifth doctor's note, plaintiff, on June 2,

2004, asked Crowner about taking FMLA leave.  According to the defendant, Crowner advised Roberts that FMLA leave ran concurrently with her medical absence, and that plaintiff had already used 10 weeks of medical leave.

After receiving plaintiff's request for a fourth extension of her disability period, and in light of Aetna's determination that plaintiff was not disabled, defendant decided to terminate plaintiff's employment on grounds that it was not clear if or when plaintiff would return to work.

Plaintiff complained to the New York State Department of Labor ("DOL") that she was not advised by the defendant of the availability of FMLA leave.  Following an investigation, the DOL found that the defendant should have mailed a specific FMLA form to Roberts with the disability paperwork that was sent to her in April, 2004.  As a result of the investigation, defendant agreed to compensate plaintiff for all benefits that would have been due to her had she requested FMLA leave in April, 2004.  Had plaintiff requested FMLA leave at that time, she would have been entitled to an additional month's worth of benefits, amounting to $280.09.  Defendant made that payment to the plaintiff, and plaintiff has accepted the payment.

Thereafter, in August 2005, more than one year after plaintiff's employment was terminated, Aetna received plaintiff's complete medical information, and reversed its previous decision

denying plaintiff's request for short-term disability benefits. Upon Aetna's granting plaintiff a period of disability from April 19, through October, 2004, defendant sent plaintiff a reimbursement check for that period.  Unbeknownst to the defendant, Aetna had already sent plaintiff a reimbursement check, and as a result, plaintiff was overpaid by $4,555.86.  Plaintiff has not returned the windfall payment.

<u>DISCUSSION</u>

I.   <u>Defendant's Motion for Summary Judgment</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  When considering a motion for summary judgment, all inferences and ambiguities must be resolved in favor of the party against whom summary judgment is sought.  <u>Gallo v. Prudential Residential Services</u>, 22 F.3d 1219, 1223 (2d Circ. 1994); <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295, 1304 (2d Cir. 1995).  If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. <u>Gallo</u>, 22 F.3d at 1224.  The defendant moves for summary judgment on grounds that no issues of material fact exist,

and that plaintiff has failed to establish a prima facie case of disability discrimination.

II.  <u>ADA Claims</u>

Plaintiff appears to have abandoned her claim that she was disabled under the ADA, and instead alleges that she was discriminated against because she was perceived as being disabled by the defendant.  Section 12102(2)(C) of the ADA provides that a person suffers from a "disability" under the ADA if that person is regarded as having a mental or physical impairment that substantially limits one or more of the major life activities of that individual.  42 U.S.C. § 12102(2)(C).  Although the plaintiff contends that the defendant erroneously believed that she suffered from an impairment or combination of impairments, she does not identify any major life activity that was allegedly substantially limited as a result of her impairments.

There is no evidence in the record to support plaintiff's claim that she was regarded by the defendant as being a person with a disability under the provisions of the ADA.  To establish that the defendant regarded her as being disabled under the terms of the ADA, Roberts is "required to adduce evidence [that] the [employer] regarded . . . [her] as having an impairment that substantially limited a major life activity."  <u>Colwell v. Suffolk County Police Dept.</u>, 158 F.3d 635, 646 (2nd Cir. 1998).  "Major life activities" are defined in the regulations promulgated by the EEOC as

"functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  45 C.F.R. § 84.3(j)(2)(ii).

To be "substantially impaired" from performing a major life activity, a plaintiff must have an impairment that "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."  Toyota, 122 S.Ct. at 691.  Moreover, "[t]he impairment's impact must also be permanent or long term." Id.

In the instant case, plaintiff has failed to produce any evidence that the defendant believed that she suffered from any condition that substantially impaired her ability from engaging in any major life activity.  Even assuming that the plaintiff were to argue that the defendant erroneously believed that plaintiff could no longer work, and assuming that plaintiff could produce some evidence in support of that argument, such a showing would still fail to establish that Roberts was wrongfully perceived as suffering from a disability.  "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs."  Sutton v. United Airlines, 527 U.S. 471, 491 (1999).  Accordingly, when proceeding under a theory of perceived disability, plaintiff must establish that the defendant employer erroneously believed that the

plaintiff suffered from a condition that prevented the plaintiff from working in a broad class of jobs, not just the job that the plaintiff previously held.  As the Supreme Court noted, it is insufficient to allege that the defendant believed the plaintiff was precluded from performing only a single job or type of job. Instead, the plaintiff must establish that the defendant believed that plaintiff's impairment precluded the plaintiff from working in a broad class of jobs.  <u>Sutton</u>, 527 U.S. at 492-493.

In this case, plaintiff has failed to introduce any evidence that the defendant believed that plaintiff was incapable of working.  Indeed, the evidence is to the contrary.  At the time that the defendant terminated plaintiff's employment, the plaintiff had failed to establish that she was entitled to short-term disability benefits, and accordingly, the defendant believed that plaintiff was <u>not</u> disabled to the extent that she was incapable of working.  Because plaintiff has failed to establish that the defendant erroneously perceived her to be disabled, I grant defendant's motion for summary judgment with respect to Roberts' ADA claim.

III.  <u>FMLA Claims</u>

A.   <u>Violation of FMLA Notice Requirement</u>.

The Family Medical Leave Act, codified at 29 U.S.C. §§ 2601, <u>et</u> <u>seq.</u>, entitles eligible employees to a total of 12 workweeks of leave during any 12-month period due to, <u>inter</u> <u>alia</u>, a serious

health condition which interferes with the employee's ability to perform his job.  29 U.S.C. § 2612(a).  Pursuant to the Act, an employer is required to post notices of employees' rights under the FMLA in the workplace and within employee handbooks.  29 U.S.C. § 2619.

Plaintiff alleges that the Health Associates failed to provide her with proper notice of her rights under the FMLA, and that as a result, she was prohibited from exercising her rights under the FMLA.  Defendant contends that it did provide proper notice of rights under the FMLA both in its employee handbook and in the notice sent to plaintiff on April 1, 2004, when Roberts was on medical leave.  While the defendant acknowledges that it did not send plaintiff a specific FMLA form, and that the New York State Department of Labor found that the defendant should have sent an FMLA form with the FMLA notice that was sent in April, 2004, defendant contends that despite the failure to send that single form, it substantially complied with its obligation to inform plaintiff of her rights under the FMLA.

Assuming, arguendo, that the defendant's failure to provide a specific form constitutes a violation of the FMLA notice requirement, the plaintiff must demonstrate that she was prejudiced by the defendant's failure to provide notice under the Act.  Ragsdale v. Wolverine World Wide Inc., 535 U.S. 81, 89 (2002).  To prevail on a claim of lack of notice under the FMLA, the employee

"must prove, as a threshold matter, that the employer violated [the FMLA] by interfering with, restraining, or denying his or her exercise of FMLA rights.  Even then, [the FMLA] provides no relief unless the employee has been prejudiced by the violation . . . ." Ragsdale, 535 U.S. at 90.

In the instant case, it is undisputed that the plaintiff received 12 weeks worth of benefits under the FMLA.  Roberts claims, however, that when her employment was terminated on June 8, 2004, she had been out of work for only 10 weeks, and thus was deprived of the FMLA's guarantee of at least 12 weeks of unpaid leave.  At the time plaintiff's employment was terminated, however, plaintiff was medically unable to work until July 19, 2004, a date almost one month after her 12 week FMLA leave period expired. Accordingly, because plaintiff was unable to work until well after the FMLA leave period expired, and because plaintiff received compensation for benefits guaranteed under the FMLA, plaintiff can not establish that she was prejudiced by having her employment terminated on June 8, 2007.

Plaintiff contends that at the time she was terminated by the defendant, the defendant did not know that she was medically unable to work until after the expiration of twelve weeks of leave, and therefore the defendant violated her right to 12 weeks of unpaid leave under the FMLA.  Again, however, assuming arguendo that the termination of plaintiff's employment prior to June 17, 2004 (the

day on which plaintiff's guaranteed leave under the FMLA would have expired) constituted a violation of the FMLA, Roberts must show that she was prejudiced by that act. Because it is undisputed that she could not have returned to work prior to July 19, 2004, and because plaintiff received compensation for the value of her benefits for a minimum of 12 weeks, she can not establish that she was prejudiced by the defendant's actions. See Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160-61 (2d Cir.1999). (An employer does not violate FMLA where it terminates an employee during his allotted twelve weeks of FMLA leave, and the employee would not have been able to return to work at the end of those twelve weeks).

Finally, plaintiff alleges that she was prejudiced by the lack of notice of her FMLA rights because the lack of notice prevented her from possibly structuring her leave differently. In support of this claim, plaintiff alleges that she was forced to take paid vacation, sick, and personal days, instead of taking unpaid leave under the FMLA. However, because Roberts was unable to work for a period far exceeding 12 weeks, and because FMLA leave runs concurrent with sick leave, plaintiff cannot, under the undisputed facts, establish that she could have altered her leave in any manner that would have benefitted her. Roberts could not have taken any less time off from work because she was medically unable to return to work for all but three days between March 25, 2004 and

July 19, 2004.  I therefore find that plaintiff has failed to establish that she was prejudiced by the alleged failure of the defendant to provide adequate notice of her FMLA rights, and grant defendant's motion for summary judgment with respect to this claim.

    B.   <u>Retaliation</u>

Plaintiff alleges that she was retaliated against for asserting or attempting to assert her rights under the FMLA.  "To state a prima facie case for retaliation [under the FMLA], the plaintiff must show: (1) she exercised rights protected under the FMLA; (2) she was otherwise qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." <u>Brown v. The Pension Boards</u>, 488 F.Supp 2d. 395 (S.D.N.Y. 2007).  Assuming <u>arguendo</u> that plaintiff could satisfy the first three elements of a prima facie case, plaintiff has failed to establish that her firing occurred under circumstances giving rise to an inference of a retaliatory intent.

Plaintiff contends that she was fired six days after she requested sick leave pursuant to the FMLA.  She further contends that an inference of retaliatory intent is raised because of the temporal proximity between the date on which she asked for leave under the FMLA, June 2, 2004, and the date on which her employment was terminated, June 8, 2004.

Plaintiff's argument, however, fails for two reasons.  First, according to the plaintiff herself, she initially requested FMLA leave in February 2004.  See Exhibits to the Declaration of Laura Roberts at Volume II, Exhibit "A", p. 4; Plaintiffs Counter statement of Facts at ¶ 72.  If in fact, plaintiff requested FMLA leave in February, 2004, then there is no temporal proximity between her requesting leave and the termination of her employment.

Second, it is undisputed that plaintiff was informed in a letter dated May 21, 2004, that her employment would be terminated on May 25, 2004 if she failed to supply proper medical information to Aetna in support of her short-term disability claim.  Accordingly, plaintiff was on notice that her employment with the defendant was in jeopardy prior to June 2, 2004, the date on which she requested FMLA leave from the defendant's human resources coordinator. Accordingly, there is no evidence in the record to suggest that Roberts' employment was terminated because she mentioned or requested taking FMLA leave.  At the time her employment was terminated, plaintiff had been out of work for over ten weeks, and was not medically cleared to work until after July 19, 2004.  I therefore grant defendant's motion for summary judgment with respect to plaintiff's retaliation claim.

<u>CONCLUSION</u>

For the reasons set forth above, I grant defendant's motion for summary judgment, and dismiss plaintiff's complaint with prejudice.


ALL OF THE ABOVE IS SO ORDERED.


S/ Michael A. Telesca

_____
    MICHAEL A. TELESCA
United States District Judge

DATED:    Rochester, New York
          August 8, 2007